1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    VICTOR FIGUEROA, et al.,                 Case No.  24-cv-02208-DMR

8                    Plaintiffs,

9         v.                                  ORDER ON PLAINTIFFS' MOTION
                                              TO REMAND
10   MULTI-COLOR CORPORATION, et al.,         Re: Dkt. No. 8

11                   Defendants.

12

13        Plaintiffs Victor Figueroa and Alden Perez filed this putative wage and hour class action in

14   Napa County Superior Court against Defendant Multi-Color Corporation.  [Docket No. 1 (Notice

15   of Removal Ex. A (Compl.)).]  Defendant subsequently removed the case to federal court,

16   invoking the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  Plaintiffs now

17   move to remand.  [Docket No. 8.]  This matter is suitable for resolution without a hearing.  Civ.

18   L.R. 7-1(b).  For the following reasons, the motion to remand is denied.

19   I.       FACTS AND PROCEDURAL BACKGROUND

20        Plaintiffs filed this class action in Napa County Superior Court on March 7, 2024, alleging

21   violations of the California Labor Code.  They seek damages for unpaid compensation and

22   statutory penalties, among other forms of relief, on behalf of a putative class of Defendant's

23   current and former non-exempt employees in California.  Plaintiffs define the putative class as

24   "[a]ll current or former non-exempt hourly employees who work or worked for Defendant in

25   California during the four years immediately preceding the filing of the Complaint through the

26   date of trial."  Compl. ¶ 43.  The complaint also alleges three subclasses.  *Id*.

27        Plaintiffs assert nine claims for relief: (1) failure to pay minimum wage in violation of

28   California Labor Code sections 1194, 1194.2, and 1197; (2) failure to pay overtime in violation of

Labor Code sections 204, 210, 510, 558, 1194, and 1198; (3) failure to pay sick time in violation of Labor Code sections 246, 558, 1194.2, 1197.1, 1198, and 1199; (4) failure to provide meal periods in violation of Labor Code sections 226.7 and 512; (5) failure to permit rest breaks in violation of Labor Code section 226.7 and 516; (6) failure to provide accurate and itemized wage statements in violation of Labor Code section 226(a); (7) failure to pay all wages due upon termination or separation in violation of Labor Code section 203 (waiting time penalties); (8) failure to reimburse for business expenses in violation of Labor Code section 2802; and (9) violation of California Business and Professions Code sections 17200 *et seq*. *See generally* Compl.

Defendant timely removed the complaint, asserting CAFA jurisdiction. Notice of Removal ¶ 9. In support of removal, Defendant asserts the total amount in controversy for the overtime, meal period, rest period, wage statement, and waiting time penalty claims is $5,374,975.20, which exceeds the $5,000,000 jurisdictional minimum under CAFA. *Id*. at ¶ 58. Defendant supports its calculations using employment data from its Human Resources department and calculations based thereon by an economist, Ariel Kumpinsky. [Docket Nos. 1-4 (Legge Decl. Apr. 11, 2024) ¶¶ 2-4; 1-6 (Kumpinsky Decl. Apr. 12, 2024) ¶¶ 4-14.]

Plaintiffs move to remand the action, arguing that Defendant has failed to establish that the amount in controversy exceeds the $5,000,000 jurisdictional minimum.

## II.     LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or other defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir.), *opinion amended on denial of reh'g,* 387 F.3d 966 (9th Cir. 2004) (citing 28 U.S.C. § 1447). "CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant,

1   and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs."

2   *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (citing 28 U.S.C. § 1332(d)).

3       In seeking removal under CAFA, the defendant bears the usual burden of establishing

4   federal jurisdiction.  *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021, 1024 (9th Cir. 2007).

5   However, unlike other removed cases, there is "no antiremoval presumption" in CAFA cases.

6   *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).  The removing

7   defendant must file a notice of removal "containing a short and plain statement of the grounds for

8   removal," 28 U.S.C. § 1446(a), and the notice "need include only a plausible allegation that the

9   amount in controversy exceeds the jurisdictional threshold"; evidentiary submissions are not

10  required.  *Ibarra*, 775 F.3d at 1197 (quoting *Dart*, 574 U.S. at 89).

11      If the plaintiff disputes the defendant's assertion of the amount in controversy, a defendant

12  must then show "by a preponderance of evidence that the aggregate amount in controversy

13  exceeds $5 million."  *Ibarra*, 775 F.3d at 1197.  The preponderance of the evidence standard

14  requires the defendant "to provide evidence establishing that it is more likely than not that the

15  amount in controversy exceeds the jurisdictional amount."  *Coleman-Anacleto v. Samsung Elecs.*

16  *Am., Inc.*, No. 16-CV-02941-LHK, 2016 WL 4729302, at *5 (N.D. Cal. Sept. 12, 2016) (cleaned

17  up) (quoting *Sanchez v. Monumental Life Ins. Co*., 102 F.3d 398, 404 (9th Cir. 1996)).  The Ninth

18  Circuit has clarified that the preponderance of the evidence standard applies irrespective of the

19  specificity of the plaintiff's allegations regarding the jurisdictional amount in controversy.  *See*

20  *Ibarra*, 774 F.3d at 1197 (the preponderance of evidence standard applies whether the complaint is

21  unclear or ambiguous regarding the jurisdictional amount in controversy, or "affirmatively

22  contend[s] that damages do not exceed $5 million").

23      Finally, in considering the allegations in the plaintiff's complaint, "[t]he court must assume

24  that the allegations of the complaint are true, and that a jury will return a verdict for the plaintiff

25  on all claims made."  *Coleman-Anacleto*, 2016 WL 4729302, at *5; *see also Ibarra*, 775 F.3d at

26  1197.  "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint,

27  not what a defendant will actually owe."  *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199,

28  1205 (E.D. Cal. 2008) (emphasis omitted).

United States District Court
Northern District of California

3

III.    DISCUSSION

Plaintiff does not dispute that CAFA's jurisdictional requirements of minimum diversity and class numerosity are met.  The parties dispute whether the complaint satisfies CAFA's requirement that the amount in controversy exceeds $5 million.  In their notice of removal, Defendant alleged that the amount in controversy is at least $5,374,975.20.  Plaintiffs argue that this sum is based on unreasonable assumptions that are unsupported by the complaint or evidence.

In its opposition, Defendant revises its estimated amount in controversy upward to $8,560,775.20, adding estimates for the minimum wage, expense reimbursement, and untimely payment of wages during employment claims.  Opp'n 18-19.  Defendant's estimates are as follows, with the additional claims shown in italics:[1]

| | |
|---|---|
| *Minimum Wage Claim* | *$1,672,500.00* |
| Overtime Claim | $1,198,622.40 |
| Meal Period Claim | $1,159,726.40 |
| Rest Break Claim | $1,223,782.40 |
| Wage Statement Claim | $671,900.00 |
| *Untimely Pay During Employment* | *$1,343,800.00* |
| Waiting Time Penalties | $1,120,944.00 |
| *Expense Reimbursement Claim* | *$169,500.00* |
| **Total** | **$8,560,775.20** |

*Id*. at 18-20.  Plaintiffs did not file a reply and thus concede the amounts estimated for the minimum wage, untimely pay, and expense reimbursement claims, which independently total

---

[1] Defendant does not offer an estimate for the amount in controversy corresponding to Plaintiffs' claim for unfair business practices.   As it is Defendant's burden to demonstrate the amounts in controversy pertaining to that claim, the court will not consider it in ruling on this motion.  *See, e.g., Brown v. Janus of Santa Cruz*, No. 21-CV-00094-BLF, 2021 WL 3413349, at *7 (N.D. Cal. Aug. 5, 2021) (declining to consider potential damages for claims for which defendant offered no argument or calculations); *Toribio v. ITT Aerospace Controls LLC*, No. CV 19-5430-GW-JPRX, 2019 WL 4254935, at *4 (C.D. Cal. Sept. 5, 2019) (same).

4

$3,185,800.

"Typically, when the plaintiff contests the defendant's amount-in-controversy allegations, both sides submit proof, and the court decides whether the jurisdictional threshold has been met." *De Vega v. Baxter Healthcare Corp.*, 507 F. Supp. 3d 1214, 1217 (N.D. Cal. 2019) (citing *Ibarra*, 774 F.3d at 1197).  The court may consider "evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment type evidence relevant to the amount in controversy at the time of removal.'"  *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).  However, a plaintiff is not required to introduce extrinsic evidence to contest the defendant's estimates and "may rely instead on 'a reasoned argument as to why any assumptions on which [defendant's numbers] are based are not supported by evidence.'" *Anderson v. Starbucks Corp.*, 556 F. Supp. 3d 1132, 1136 (N.D. Cal. 2020).

"[A] defendant cannot establish removal jurisdiction [under CAFA] by mere speculation and conjecture, with unreasonable assumptions."  *Ibarra*, 775 F.3d at 1197; *see also Coleman-Anacleto*, 2016 WL 4729302, at *5 ("Mere conclusory allegations are insufficient, as are 'speculative and self-serving assumptions.'" (quoting *Garibay v. Archstone Cmtys. LLC*, 539 F. App'x 763, 764 (9th Cir. 2013))).  "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure."  *Ibarra*, 775 F.3d at 1198.

The court concludes that Defendant has "plausibly established that it is reasonably possible that the amount in controversy exceeds" the $5 million threshold.  *See Anderson*, 556 F. Supp. 3d at 1137.  With respect to the meal and rest period claims, California Labor Code section 226.7 requires that an employer pay an employee "one additional hour of pay at the employee's regular rate of compensation for each workday" that a meal or rest period is not provided.  Cal. Lab. Code § 226.7(c).  Defendant's calculations of the amount in controversy for meal period and rest period violations are $1,159,726.40 and $1,223,782.40, respectively, for a total of $2,383,508.80.

Defendant bases its meal period violation estimate on the following: California Labor Code section 512(a) provides that "[a]n employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less

United States District Court
Northern District of California

than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee." Based on a review of Defendant's business records, Kumpinsky estimates 427 putative class members worked an aggregate of 213,185 shifts that exceeded six hours in length from March 5, 2020 through March 31, 2024.  Kumpinsky Decl. ¶¶ 4, 10, 14.  Putative class members received an average hourly rate of pay of at least $27.20.  *Id*. at ¶ 5.  Defendant states that it "conservatively estimated that mutual waivers were in place for all putative class members during the entirety of the claimed liability period, and thus considered only shifts exceeding six hours" in calculating the value of the meal period claim.  Notice of Removal ¶ 37 n.6.  Using a 20% violation rate and the $27.20 hourly rate of pay, Defendant calculates the amount in controversy for the meal period claim to be $1,159,726.40 ($27.20 x (213,185 shifts x 0.2 violation rate)).  *See* Notice of Removal ¶ 38.

Defendant's calculation of the rest period violation estimate is as follows: under California law, employers must provide at least one 10-minute rest period for shifts "from three and one-half hours to six hours in length."  *Brinker Rest. Corp. v. Superior Ct.*, 53 Cal. 4th 1004, 1029 (2012). Kumpinsky estimates that 427 putative class members worked an aggregate of 224,960 shifts exceeding 3.5 hours in length from March 5, 2020 through March 31, 2024.  Kumpinsky Decl. ¶¶ 4, 9, 14.  The average hourly rate of pay was $27.20.  *Id*. at ¶ 5.  Using the same 20% violation rate and the $27.20 hourly rate of pay, Defendant calculates the amount in controversy for the rest period claim to be $1,223,782.40 ($27.20 x (224,960 shifts x 0.2 violation rate)).  *See* Notice of Removal ¶ 44.

Plaintiffs allege that they "and other non-exempt employees were denied compliant and timely 30-minute off-duty meal periods."  Compl. ¶ 32.  Specifically, they allege that "[d]ue to Defendant's uniform meal period policies/practices, operational requirements, and work demands, Plaintiffs and other non-exempt employees often could not take timely and uninterrupted net 30-minute first meal periods before the end of the fifth hour of work."  *Id*.  With respect to rest periods, Plaintiffs allege that "due to Defendant's uniform rest period policies/practices, operational requirements and work demands . . . Plaintiffs and other non-exempt employees were

and are often unable to take a net 10-minute duty-free rest period for every major fraction of four hours worked." *Id*. at ¶ 35.  Although the complaint does not describe a specific rate of missed meal or rest periods, it alleges that non-exempt employees "were regularly denied legally compliant" meal periods and rest breaks in violation of California law.  *Id*. at ¶¶ 34, 37.

Plaintiffs offer two arguments as to why Defendant's calculations are incorrect.  Mot. 8-9. First, Plaintiffs argue that Defendant's average hourly rate of $27.20 is "unsubstantiated" and that Defendant does not explain how it determined the number of applicable shifts for each claim.  *Id*. at 9, 10.  With respect to the average hourly rate, Plaintiffs ignore Kumpinsky's declaration explaining how the figure was derived by "aggregating all regular dollars earned of regular, overtime, and double time pay codes" during the relevant time period and "dividing by the total hours worked of putative class members" during that period.  *See* Kumpinsky Decl. ¶ 5. Kumpinsky obtained this data from Defendant; specifically, "payroll and time punch records of the hourly employees who worked for Defendant during the period March 7, 2020 through March 31, 2023[.]" *Id*. at ¶ 4.  Plaintiffs also do not address the portion of Kumpinsky's declaration describing how Kumpinsky determined the number of shifts exceeding 3.5 and six hours.  *See id*. at ¶¶ 9, 10.  Importantly, Plaintiffs do not counter Defendant's estimates with any of their own.  In sum, the court finds that Defendant's evidence on these points is sufficiently credible.

Second, Plaintiffs note that the complaint does not specify the frequency with which they and the putative class members were deprived of proper meal and rest periods.  They argue that Defendant has not adequately supported its assumption that Plaintiffs and the putative class members missed 20% of their meal periods and 20% of their rest periods.  Mot. 10-11.

"Courts in this Circuit, including in this District, have frequently upheld at least a 20% violation rate for purposes of CAFA amount in controversy calculations where the plaintiff does not specify the frequency of the alleged missed meal or rest periods." *Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-CV-00719-NC, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019) (collecting cases); *Danielsson v. Blood Centers of Pac.*, No. 19-cv-04592-JCS, 2019 WL 7290476, at *6 (N.D. Cal. Dec. 30, 2019) (same).  For example, in *Arreola v. Finish Line*, No. 14-CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014), the court held that where "a

United States District Court
Northern District of California

proposed class includes all employees during the class period, and the plaintiff pleads that an employer has a regular or consistent practice of violating employment laws that harmed each class member, such an allegation supports a defendant's assumptions that every employee experienced at least one violation once per week." *See also Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 911 (N.D. Cal. 2016) (finding assumption that each putative class member missed one meal break and one rest period per workweek was reasonable where plaintiff alleged he "regularly" missed breaks and that "defendants maintained a 'policy or practice' of both meal and rest break violations"). Here, Plaintiffs admit that the complaint "generally avers a general pattern and practice" with respect to the putative class members not receiving compliant meal and rest periods. Opp'n 8-9. Moreover, they do not provide any argument or evidence suggesting the assumption of a 20% violation rate is unreasonable; for example, Plaintiffs did not submit any evidence with their motion or "an alternative violation rate grounded in real evidence." *Ibarra*, 775 F.3d at 1199. As one court in this district recently observed in denying a motion to remand based on a disputed amount in controversy under CAFA, Plaintiffs "do[ ] not suggest what a more accurate amount in controversy would look like, and it is not the Court's job to fill in the blanks." *Remillard v. Charles Mach. Works*, No. 23-CV-02639-RS, 2023 WL 4400049, at *3 (N.D. Cal. July 7, 2023) (citing *Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir. 2020)) (accepting 20% violation rate for meal and rest period violations). Ultimately, "CAFA does not require Defendant to comb through its records to identify and calculate the exact frequency of violations, nor does it require Defendant prove it actually violated the law at the assumed rate." *Danielsson*, 2019 WL 7290476, at *7 (cleaned up).

The court concludes that Plaintiff has not shown that Defendant's assumed violation rates are unreasonable. The $2,383,508.80 damages estimate for the meal and rest period claims is reasonable and supported. Plaintiffs do not dispute the estimates for the minimum wage, untimely pay, and expense reimbursement claims, which independently total $3,185,800. Accordingly, Defendants have shown that the amount in controversy is at least $5,569,308.80, which satisfies CAFA's $5 million threshold. Given that the estimates for these five categories of claims exceed the monetary threshold, the court need not consider the estimates for the remaining categories of

claims.  The motion to remand is denied.

**IV.      CONCLUSION**

For the foregoing reasons, Plaintiffs' motion to remand is denied.

**IT IS SO ORDERED.**

Dated: June 24, 2024



Donna M. Ryu
Chief Magistrate Judge
Judge Donna M. Ryu